UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

SAUL ARTURO MEJIA,

        Petitioner,                      Case No. 1:20-cv-991

v.                                              Hon. Hala Y. Jarbou

BRYAN MORRISON,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Saul Arturo Mejia is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On April 18, 2017, following a four-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c. On June 6, 2017, the court sentenced Petitioner to concurrent terms of 11 years, 3 months to 40 years' imprisonment for the CSC-I conviction, and 5 years, 11 months to 15 years' imprisonment for the CSCI-II conviction.

On October 16, 2020, Petitioner, with the assistance of counsel, filed his habeas corpus petition raising two grounds for relief, as follows:

    I.    Trial counsel has a duty to challenge prosecution expert testimony that is not only unreliable but also highly damaging to the defense. Here, trial counsel failed to raise a *Daubert* challenge to prosecution expert testimony

> on Child Sexual Abuse Accommodation Syndrome (CSAAS)[1], which has been highly discredited. Did trial counsel render ineffective assistance?
>
> II. Where the prosecution relies on expert testimony whose scientific reliability is in dispute, trial counsel is obligated to present a counter-expert to reveal that dispute to the jury. Here, even assuming that the CSAAS testimony would have survived a *Daubert* challenge, its reliability is highly suspect. Did trial counsel render ineffective assistance by failing to consult with and present a counter-expert at trial?

(ECF No. 1-1, PageID.11.) Respondent asserts that Petitioner's claims lack merit. (ECF No. 6.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.  Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

> This case concerns [Petitioner's] sexual abuse of his minor niece, JS, who lived with [Petitioner] and her aunt between the ages of 7 and 15. JS testified that [Petitioner] began inappropriately touching her when she was approximately nine years old and that the touching became more frequent and sexual as she grew older. According to JS, by the time she was 13 or 14 years old, [Petitioner] was digitally penetrating her vagina. Around the time JS was 14 or 15 years old, she began an online friendship with JP, who lived in England. JS first disclosed the abuse to JP, and then to her aunt and biological father. According to JS, when she told her aunt about the abuse, her aunt yelled at her, so, in an effort to get her aunt to stop yelling, she told her aunt that she lied about the abuse to get attention from JP. [Petitioner's] theory at trial focused on this recantation, positing that JS fabricated the story to get attention from JP.
>
> JS also testified that she had delayed disclosing the abuse for some time. At trial, several witnesses testified that it was normal for children to delay disclosing sexual abuse. The lead detective in this case testified that he had investigated hundreds of sexual-assault complaints and that, in his experience, the cases involving children "absolutely" involved delayed disclosure. The lead detective also testified that it

---

[1] CSAAS is a concept developed by scholars, beginning with Roland Summit in 1983, "to describe the signs and symptoms shown by child victims: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted and unconvincing disclosure; and (5) retraction." See *Artiaga v. Money*, No. 3:04 CV 7121, 2006 WL 1966612, at *12 (N.D. Ohio. July 11, 2006).

2

>   was not uncommon for a victim to have continued contact with her abuser. Barbara Welke, the former director of the Children's Assessment Center (CAC), was admitted as an expert in the area of forensic interviewing of sexually abused children. Welke testified that scientific literature revealed that it was not uncommon for children to delay disclosing sexual abuse and that a child may recant an allegation of abuse, despite it being true. Welke cited several studies in her testimony, one of which she claimed indicated that 25% of child victims recant their allegations during the disclosure process. According to Welke, several factors affect whether a child delays disclosure or recants her allegations. For instance, a child may delay disclosure or recant her allegations if she does not feel supported or believed. On cross examination, however, Welke admitted that sometimes children do lie about sexual abuse.

*People v. Mejia*, No. 339426, 2019 WL 638062, at *1 (Mich. Ct. App. Feb. 14, 2019).

Petitioner subsequently appealed his convictions and sentence, and the Michigan Court of Appeals granted his motion to remand for a *Ginther*[2] hearing to determine whether trial counsel rendered ineffective assistance. *Id.* The trial court held an evidentiary hearing on March 20–21, 2018. (ECF Nos. 7-11, 7-12.) At that hearing, Petitioner raised several claims of ineffective assistance, but primarily argued that "his trial counsel was ineffective for failing to challenge Welke's expert testimony—either through a *Daubert* hearing or by procuring an independent expert." *Mejia*, 2019 WL 638062, at *1.

At the evidentiary hearing, Petitioner presented testimony from Dr. Maggie Bruck, an experimental psychologist, as evidence of counsel's ineffectiveness. Dr. Bruck testified that Welke's testimony at trial related to the theory of CSAAS, which had originated from an article published in 1983 by Dr. Roland Summit. (ECF No. 7-11, PageID.1102.) In that article, Dr. Summit concluded that children do not readily disclose sexual abuse for a variety of reasons, including feeling threatened or embarrassed, or because they do not understand the nature of the action against them. (*Id.*, PageID.1102–03.) Dr. Bruck noted that since the publication of that

---

[2] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellate has raised claims of ineffective assistance of counsel that require development of a record.

3

article, the "field has broken open," and disclosures by children have been explored with more depth. (*Id.*, PageID.1103.) Dr. Bruck noted that several aspects of CSAAS have been criticized, particularly the use of delayed disclosure and recantation as proof that sexual abuse has occurred. (*Id.*, PageID.1108–26.) For example, Dr. Bruck testified that studies have revealed that delayed disclosure and recantation are also present when a child has fabricated their story; accordingly, because of such occurrences, delayed disclosure and recantation are not reliable evidence that abuse has occurred. (*Id.*) Dr. Bruck also indicated that there were several issues with the articles cited by Welke during her testimony. For example, she noted that while there were studies indicating a recantation rate as high as 25% among child victims (*id.*, PageID.1116), the more methodologically reliable studies had revealed a recantation rate under 8% (*id.*, PageID.1121). Dr. Bruck testified that CSAAS is not generally accepted in the scientific community because it "has a very weak scientific foundation." (*Id.*, PageID.1125.) Dr. Bruck did acknowledge, however, that delayed disclosure and recantation are not necessarily inconsistent with a true allegation of abuse.[3]

---

[3] Dr. Bruck's concern regarding CSAAS was not with Roland Summit's formulation of the theory, but with subsequent "elaboration" by others that suggested the presence of the behaviors was diagnostic when, in fact, the same behaviors might be present when the allegation of sexual abuse was false. That same concern is echoed in the Michigan Supreme Court's decision that expert testimony regarding CSAAS is admissible, but only for a limited purpose:

> We hold that the prosecution may present evidence, if relevant and helpful, to generally explain the common postincident behavior of children who are victims of sexual abuse. The prosecution may, in commenting on the evidence adduced at trial, argue the reasonable inferences drawn from the expert's testimony and compare the expert testimony to the facts of the case. Unless a defendant raises the issue of the particular child victim's postincident behavior or attacks the child's credibility, an expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child.

*People v. Peterson*, 537 N.W.2d 857, 868 (Mich. 1995) (footnotes omitted).

Defense counsel Jeffrey Schroder also testified during the evidentiary hearing. (*Id.*, PageID.1211.) Schroder testified that he did retain Michael Brock as an expert to testify about the forensic interviewing protocol at the CAC. (*Id.*, PageID.1223.) He wanted an expert because the victim's credibility was the "biggest issue in this case." (*Id.*) Counsel thought that the CAC used "some leading and suggestive techniques" while interviewing the victim. (*Id.*) He testified, however, that this case was not particularly "difficult, scientific, [or] highly technical." (*Id.*, PageID.1227.)

Counsel also testified that his strategy involved turning Welke "into a defense expert." (*Id.*) For example, Welke "admitted that kids sometimes lie." (*Id.*) He also was able to have Welke indicate that she neither treated nor studied children and was essentially an "expert in interviewing children in sexual assault cases." (*Id.*) Counsel testified that he believed a counter-expert would not be "terribly impactful" because he could "get what [he] needed" from Welke. (*Id.*, PageID.1227–28.) He noted that this case involved the "credibility of a teenage girl," and that Welke would not have been able to testify regarding any scientific principle that reliably indicated that JS had told the truth. (*Id.*, PageID.1228.)

Barbara Welke provided testimony at the evidentiary hearing. (ECF No. 7-12.) She noted that during Petitioner's trial, she "gave testimony on common behaviors that children display during the course of disclosing sexual abuse." (*Id.*, PageID.1260.) Welke testified that she is familiar with CSAAS. (*Id.*, PageID.1262.) She admitted, however, that she has never been qualified in the field of CSAAS. (*Id.*, PageID.1263.) Welke disagreed that jurors already understand delayed disclosure, noting that she had "frequently" met with law enforcement officials who appeared to call a complainant's credibility into question if delayed disclosure was involved.

5

(*Id.*, PageID.1278.) Moreover, over objection from Petitioner's counsel, Welke testified that CSAAS is generally accepted in the scientific community. (*Id.*, PageID.1285–87.)

On May 30, 2019, the trial court denied Petitioner's motion for a new trial on remand, concluding that Petitioner had failed to establish that trial counsel was ineffective. (ECF No. 7-13, PageID.1492–1515.) The trial court concluded that Welke's testimony at trial was admissible under Michigan Rule of Evidence 702 and that defense counsel acted strategically and reasonably to use Welke's testimony to Petitioner's advantage rather than challenging it under *Daubert* or via a counter-expert. (*Id.*) The court of appeals affirmed Petitioner's convictions and sentence on February 14, 2019. *Mejia*, 2019 WL 638062, at *1. On January 24, 2020, the Michigan Supreme Court denied Petitioner's application for leave to appeal. (ECF No. 7-14, PageID.1723-24.) This § 2254 petition followed.

## II.     AEDPA Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020)

(quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise

7

contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

8

### III.  Discussion

As noted above, Petitioner asserts two claims of ineffective assistance of counsel in his § 2254 petition. Petitioner contends that trial counsel failed to request a *Daubert* hearing to challenge the reliability of Welke's testimony and, alternatively, that counsel should have called a counter-expert to challenge Welke's testimony.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel*, 350 U.S. at 101); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both

9

*Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner first contends that counsel should have requested a *Daubert* hearing to challenge Welke's testimony. In *Daubert*, the Supreme Court concluded that trial judges must ensure that admitted expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594. The Court identified several factors for consideration when evaluating scientific expert testimony, including: "the testability of the expert's hypotheses (whether they can be or have been tested, whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 593–94). *Daubert* was concerned with the admissibility of expert testimony pursuant to Federal Rule of Evidence 702. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [federal habeas review of] appellant's [state court] conviction."). In Michigan, Rule 702 of the Michigan Rules of Evidence incorporates the standards set forth in *Daubert*. *See Gilbert v. Daimler Chrysler Corp.*, 470 Mich. 749, 781, 685 N.W.2d 391, 408 (2004).

The Michigan Court of Appeals determined Welke was qualified to provide expert testimony pursuant to Michigan Rule of Evidence 702. *See Mejia*, 2019 WL 638062, at *3. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry into whether evidence was properly admitted under state law "is no part of a federal court's habeas review of a

10

state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67–68. "The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief unless the evidence violates due process or some other federal constitutional right." *Randolph v. Wolfenbarger*, No. 04-cv-73475, 2006 WL 1662885, at *5 (E.D. Mich. June 12, 2006) (citing *Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001)); *see also Adesiji v. Minnesota*, 854 F.2d 299, 300 (8th Cir. 1988) (whether expert testimony regarding general patterns of credibility among children reporting sexual abuse was properly admissible was "essentially a matter of state law"). "Similarly, a determination as to whether an individual is qualified to give expert testimony involves only a state law evidentiary issue." *Randolph*, 2006 WL 1662885, at *5 (citation omitted).

Petitioner, however, cannot demonstrate that the admission of Welke's testimony violated his due process rights. "The Supreme Court has never held that admitting evidence of questionable reliability against a criminal defendant without holding a *Daubert* hearing or similar procedure violates due process." *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017). "The Supreme Court did not set a constitutional floor for the reliability of scientific evidence in *Daubert*, and screening evidence through *Daubert*'s standards is not constitutionally required." *Id.* at 321 (citation omitted); *see Smith v. Ross Corr. Inst.*, No. 16-3157, 2017 WL 3623939, at *1 (6th Cir. July 3, 2017) ("The district court properly concluded that Smith was not entitled to relief on his claim that the admission of the testimony violated *Daubert* because *Daubert* concerns only the Federal Rules of Evidence and not state evidentiary rules."); *Thomas v. Jackson*, 2017 WL 2608753, at *7 (W.D. Mich. June 16, 2017) ("At no time has the Supreme Court held that *Daubert* and *Kumho Tire* provide the standard for evaluating whether an admission of evidence violates due process."). Petitioner fails to show that the state court's determination that Welke qualified as

11

an expert under Michigan's rules of evidence or that her testimony was reliable violated fundamental fairness. The court of appeals' determination that Welke's testimony was admissible pursuant to Michigan Rule of Evidence 702 is, therefore, axiomatically correct on habeas review.

Because the state court acted properly in admitting Welke's testimony pursuant to Michigan Rule of 702, and because Petitioner cannot demonstrate that his due process rights were violated by the admission of Welke's testimony, any request by counsel for a *Daubert* hearing to challenge her testimony would have been meritless. Even extending beyond Supreme Court authority—which limits this Court's habeas review but not counsel's ability to raise challenges in state court—does not change this conclusion because neither circuit nor district court authority holds that the admission of reliable expert testimony renders a trial fundamentally unfair. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005) ("Because we cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law, we are constrained to uphold the district court's denial of the writ."). Petitioner's first claim of ineffective assistance will, therefore, be dismissed.

Petitioner next asserts that counsel was ineffective for failing to present expert testimony of his own to counter Welke's testimony. Petitioner asserts that Welke "was essentially permitted to testify that J.S. exhibited several of the traits that define a child sexual abuse victim under the CSAAS construct." (ECF No. 1-1, PageID.64.) Essentially, Petitioner contends that counsel should have presented an expert witness to counter the suggestion that J.S. was credible. (*Id.*, PageID.65.) In rejecting Petitioner's claims, the court of appeals stated:

> For these same reasons, we also reject [Petitioner's] related argument that defense counsel was ineffective for failing to procure an expert witness to counter Welke's

12

>testimony regarding CSAAC.[4] Again, per defense counsel's evaluation, the debate over CSAAC was not particularly relevant to this case. Rather, defense counsel believed that the main issue in this case was the credibility of the victim. Although defense counsel did consult an expert in child forensic interviewing, defense counsel decided not to present this witness. Rather, defense counsel chose to focus on the narrative of a teenager caught up in an online relationship and telling lies for attention. Counsel's strategy was ultimately unsuccessful; however, "[a] failed strategy does not constitute deficient performance." *People v. Petri*, 279 Mich. App. 407, 412–413, 760 N.W.2d 882 (2008). Counsel is given "wide discretion in matters of trial strategy," *People v. McFarlane*, --- Mich. App. ----, -- ---; --- N.W.2d ---- (2018) (Docket No. 3361877); slip op. at 8, and we find no reason to conclude that counsel's choice to present a narrative to the jury, rather than an intricate scientific debate, was objectively unreasonable. Accordingly, we are unable to conclude that defense counsel was ineffective for deciding not to pursue an expert witness versed in CSAAC.

*Mejia*, 2019 WL 638062, at *3–4.

"Decisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Moreover, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.*

This Court has noted that the "battle of expert testimony regarding delayed disclosure plays out in many CSC-I cases." *Mosher v. Burt*, No. 1:20-cv-33, 2021 WL 2926059, at *12 (W.D. Mich. May 3, 2021) (citing *Howell v. Parish*, No. 1:19-cv-446, 2021 WL 1169846, at *9–10 (W.D.

---

[4] The court of appeals' opinion defines the abbreviation for Child Sexual Abuse Accommodation Syndrome as CSAAS. Nonetheless, in the middle of the opinion, the court shifted from CSAAS to CSAAC.

13

Mich. Mar. 4, 2021)). This battle often involves a conflict between testimony that delayed disclosure evidences fabrication and testimony that delayed disclosure is common and "follows from the difficulty inherent in disclosing sensitive sexual acts." *Howell*, 2021 WL 1169846, at *9. "The relatively recent social media publication of first-hand accounts from thousands of victims revealing pervasive sexual harassment and abuse, typically never reported at the time it occurred . . ., suggests that the common experience of jurors might be enough to help them evaluate the credibility of delayed disclosures without expert assistance." *Mosher*, 2021 WL 2926059, at *12.

In this case, Petitioner simply has not demonstrated that counsel's failure to present an expert witness to counter Welke's testimony deprived him of a "substantial defense." *Collins*, 2011 WL 4346333, at *16. Petitioner argues that an expert should have been presented to counter Welke's suggestion that the victim was credible. Essentially, Petitioner appears to suggest that counsel should have called an expert to indicate that delayed reporting of sexual abuse indicates fabrication and that timely reporting of such abuse is true and that a recantation reliably indicates that the initial disclosure was false. To support this assertion, Petitioner presented testimony from Dr. Bruck during the two-day evidentiary hearing in state court. Dr. Bruck's testimony focused on the fact that several aspects of CSAAS have been criticized. However, as noted above, Dr. Bruck acknowledged that delayed disclosure and recantation are not necessarily inconsistent with a true allegation of abuse. Any expert presented by Petitioner's counsel would not have stated that only timely reporting of sexual abuse is true or that a recanted disclosure is false. Both experts would have noted that neither delayed disclosure nor recantation mean that the disclosure of the abuse is true and does not mean that it is false.

During the evidentiary hearing, counsel testified that he had retained Michael Brock as an expert to testify about the forensic interviewing protocol at the CAC because, in his belief, the victim's credibility was the "biggest issue in this case." (ECF No. 7-11, PageID.1223.) He testified that this case was not particularly "difficult, scientific, [or] highly technical." (*Id.*, PageID.1227.) Counsel also testified that he was able to get Welke to admit that "kids sometimes lie" and that she neither treated nor studied children and was essentially an "expert in interviewing children in sexual assault cases." (*Id.*) Counsel testified that he believed a counter-expert would not be "terribly impactful" because he could "get what [he] needed" from Welke. (*Id.*, PageID.1227–28.) He noted that this case involved the "credibility of a teenage girl," and that Welke would not have been able to testify regarding any scientific principle that reliably indicated that JS had told the truth. (*Id.*, PageID.1228.)

The court of appeals identified a sound trial strategy here. As noted by the Sixth Circuit, "the Supreme Court has held that '[i]n many instances *cross-examination will be sufficient* to expose defects in an expert's presentation.'" *Jackson v. McQuiggin*, 553 F. App'x 575, 582 (6th Cir. 2014) (quoting *Harrington*, 562 U.S. at 111). Counsel's strategy was to demonstrate that this case involved the victim fabricating an allegation of abuse after being caught up in influence from an online relationship. Given this focus, counsel's decision to not present a counter-expert and, instead, focus on cross-examination was a reasonable trial strategy. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005); *see also Mosher*, 2021 WL 2926059, at *11–12 (rejecting the petitioner's claim of ineffective assistance premised upon counsel's failure to call an expert to counter testimony provided by the prosecution's expert (Welke) regarding delayed disclosure).

To prevail Petitioner must show that that counsel's strategy deprived Petitioner of the defense that the victim was incredible. The record does not support that claim. The fact that

15

counsel's strategy was ultimately unsuccessful does not mean that counsel's pursuit of it was professionally unreasonable. The court of appeals concluded that counsel's strategy was not "objectively unreasonable." This Court agrees. In sum, Petitioner has failed to show that the state court's rejection of his ineffective assistance claims premised upon counsel's failure to pursue a *Daubert* hearing and, alternatively, to present a counter-expert is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to habeas relief for his claims.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated:   May 31, 2022                              /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   UNITED STATES DISTRICT JUDGE